### WESTERN UNION TELEGRAPH CO. v. IVY.

(Circuit Court of Appeals, Eighth Circuit. February 21, 1910.)

No. 3,075.

1. DAMAGES (§ 1*)—ELEMENTS—BREACH OF CONTRACT.

Damages can only be allowed for that which is the result of a breach of contract or wrong done, and, if resulting from a breach of contract, cannot be determined by speculation, argument, or dependency on one or more contingencies.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. TELEGRAPHS AND TELEPHONES (§ 73*)—MESSAGES—FAILURE TO DELIVER—DAMAGES—CONTINGENCIES.

Plaintiff's son having died suddenly in T., his body was taken to the undertaking rooms of one "Sinclair." Plaintiff having been informed of the death, but having forgotten the name of the undertaker, examined a list of undertakers in T., and telephoned one H., who offered to find out who had the body and take charge of it; but plaintiff instructed him to do nothing, and went to an undertaker and there decided that the name of the one having the body was "St. Clair," whereupon a message was sent addressed to "St. Clair" directing him to ship the body and notifying him of the deposit of $30 for expenses. This message never reached T. After sending it, plaintiff was called on the long distance phone from T., but declined to answer the call, stating that it would incur additional expense. If "Sinclair" had received the message, he would not have shipped the body unless $65 guaranty had been deposited, and, about a month after the body had been buried in the Potters' Field, "Sinclair" would have taken the body up and shipped it on a like guaranty of $125, but not for less. *Held*, that plaintiff's right to recover depended on the finding of one contingency after another in his favor, to wit: That the T. operator would have known that "Sinclair" was the party intended, that "Sinclair" would have wired that $65 was required, that plaintiff would have paid for that message and would have deposited that amount

and so wired "Sinclair," and that defendant was therefore entitled to the direction of a verdict.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 73.*]

3. TELEGRAPHS AND TELEPHONES (§ 66*)—MESSAGES—DUTY OF TELEGRAPH COMPANY—EVIDENCE.

Where a message is received, and the charges paid, the telegraph company must, up to its capacity, transmit it with other messages tendered, and a failure to do so is prima facie evidence of negligence warranting a verdict, unless such failure is satisfactorily explained by the company, though it is not the insurer of the delivery of messages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 63; Dec. Dig. § 66.*]

4. TELEGRAPHS AND TELEPHONES (§ 66*)—MESSAGES—LOSS IN TRANSMISSION—NEGLIGENCE—STRIKES.

Evidence that a telegram was lost in transmission between St. Louis and its destination, that the St. Louis operator duly sent the message and received back the signal that the message had been received at destination, but that a strike of defendant's employés was in progress at the time, and defendant's service interfered with all over the country by keys being opened and wires grounded by the strikers and unauthorized persons, was sufficient to rebut the prima facie case of negligence arising from a failure to transmit and deliver the message.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 66.*]

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Action by C. M. Ivy against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

See, also, 165 Fed. 371.

George H. Fearons, U. M. Rose, W. E. Hemingway, G. B. Rose, D. H. Cantrell, and J. F. Loughborough, for plaintiff in error.

Durand Whipple (William G. Whipple, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and SMITH McPHERSON, District Judge.

SMITH McPHERSON, District Judge. C. M. Ivy brought this action to recover damages for the failure to deliver a telegram received by the company for transmission. In August, 1907, his son, Leo Ivy, 15 years of age, suddenly died on the streets of Terre Haute, Ind., where the son was a stranger. The body was at once taken to the undertaking rooms of E. V. Sinclair of Terre Haute. By reason of a letter on the body, notice was given by the undertaker to a friend of the boy in Memphis, Tenn. This friend conveyed the information as to the death by telephone from Memphis to Hot Springs, Ark., where the plaintiff resided. Plaintiff had no telephone, and the conversation was with a lady neighbor, who undertook to convey the information to the plaintiff. In doing so she had forgotten the name of the Terre Haute undertaker. Upon a list of Terre Haute undertakers being presented to her, she thought the name of "Hickman" was the

one who had the body in charge. Thereupon plaintiff telephoned him, and he offered to find out who had the body and to take charge of it. Plaintiff told Hickman to do nothing. Thereupon plaintiff went to an undertaker in Hot Springs, and, in looking over the names of the Terre Haute undertakers, it was decided that the name of the one having the body was E. V. St. Clair. Thereupon the plaintiff and the local undertaker, H. McCafferty, went to a substation of the company at Hot Springs, and requested the operator to write out the following message, which McCafferty signed:

> "Hot Springs, Arkansas, August 30th, 1907.
>
> "E. V. St. Clair. Terre Haute, Indiana. Ship body of Leo Ivy to Traskwood, Arkansas. Thirty dollars for expenses.
>
> "[Signed] H. McCafferty, Undertaker."

There was no undertaker in Terre Haute by the name of E. V. St. Clair; the name being Sinclair. This telegram never reached Terre Haute. Traskwood was some miles distant from Hot Springs, to which point plaintiff desired the body sent by reason of the fact that the bodies of some members of his family had been buried there. Plaintiff and some of his family went to Traskwood, and remained for a day or two, and, the body not coming, they returned to their home, incurring expenses for telephone and telegrams, and traveling expenses, and loss of time, aggregating $40. Before leaving Hot Springs for Traskwood, plaintiff was called up by the long distance telephone from Terre Haute: but he declined to answer the call, stating that it would incur an additional expense, and would serve no purpose. Sinclair retained the body a couple of days, and then buried it in the Potters' Field in the cemetery at Terre Haute. If Sinclair had received the message, he would not have shipped the body for less than $65; the guaranty to be made good by deposit of the money with the local express office in Hot Springs. About a month afterwards, when all the facts were learned, Sinclair would have taken the body up and shipped it upon a like guaranty of $125, and not for less.

Section 7947 of Kirby's Digest of the Statutes of Arkansas of March 7, 1873, is as follows:

"All telegraph companies doing business in this state shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages; and in all actions under this section the jury may award such damages as they conclude resulted from the negligence of the said telegraph company."

Such damages are not allowed in Indiana. The case was tried to a jury, resulting in a verdict and judgment in favor of the plaintiff of $1,478.62, and the telegraph company now seeks to reverse this judgment by writ of error.

On the foregoing statement it will be seen that more than $1,400 of the judgment is on account of mental anguish.

Much of the time of the trial, much of the evidence, and a considerable part of the charge of the court were devoted to the various propositions as to what would have been the result had the message been received at the office of the telegraph company in Terre Haute.

The evidence shows that, while there was no undertaker there by the name of St. Clair, the city and telephone directories showed that E. V. Sinclair was an undertaker. The wording of the message showed that it was of and concerning a human body. It was contended by the plaintiff, in which he was sustained by the jury and the Circuit Court, that by the exercise of diligence by the Terre Haute office, the message would have been delivered to Sinclair. It was also successfully contended, both before the jury and the Circuit Court, that although there was only a guaranty of $30, and no statement made as to how that guaranty would be enforced, if the message had been received by the Terre Haute telegraph office, negotiations by telegraph would have taken place, and the additional guaranty, amounting to $65 in the aggregate, would have been made with the express company agreeably to the terms of Mr. Sinclair.

Whether the statute above quoted allowing damages for mental anguish could have any application to an interstate message, and whether such statute as to such interstate message would impinge upon the "commerce clause" of the national Constitution, and whether such statute is anything more than the exercise of the police power of the state of Arkansas, and, if the latter, whether the same could be enforced in an action for damages by reason of the failure to deliver an interstate message, are all questions that we pass to one side. We do not decide as to any of those questions.

But we are of the opinion that, if the message had been delivered to the Terre Haute office, there were so many uncertainties and things intervening that it cannot be judicially said that the body would have been transmitted to Traskwood, Ark. Nor can it be said that the telegraph company in receiving the message in Arkansas for transmission could have contemplated, as the result of a failure to thus transmit the message, that such conditions would arise and all be solved in favor of the plaintiff:

Would the Terre Haute operator have learned that Sinclair was the party intended, and not St. Clair? Would Sinclair have wired back that $65 must be deposited with an express company at Hot Springs? Would plaintiff have paid for said message, and have made such deposit, and so wired Sinclair?

These questions must all be answered in the affirmative, and in addition thereto it must be said, before the alleged cause of action could be maintained, that such things and such answers were in the contemplation of the company when it failed to put the message over the wire to Terre Haute. It could not reasonably have been expected that further correspondence would take place, and that such correspondence, if taking place, would result in the end to the satisfaction of Sinclair.

Damages can only be allowed for that which is the result of the breach of the contract, or of the wrong done. And that which is the result of such breach or wrong cannot be determined by speculation, or argument, or the dependency of one contingency on another. Globe Co. v. Landa Co., 190 U. S. 540, 544, 23 Sup. Ct. 754, 47 L. Ed. 1171; Boston R. R. Co. v. O'Reilly, 158 U. S. 334, 15 Sup. Ct. 830, 39 L.

Ed. 1006; Primrose v. Western Union, 154 U. S. 1, 29, 14 Sup. Ct. 1098, 38 L. Ed. 883; Richmond R. R. Co. v. Elliott, 149 U. S. 266, 13 Sup. Ct. 837, 37 L. Ed. 728.

In the case at bar, plaintiff in person, or through McCafferty as agent, could not direct or command Sinclair. It was a matter of contract to be preceded by negotiations with no certainty that negotiations would ripen into a contract. It was all conjecture.

Plaintiff had been advised that some one at Terre Haute had the body of his son. He telephoned the undertaker Hickman, and then told Hickman to do nothing. Then later the same day, after sending the telegram, he had a call by phone from Terre Haute, which he refused to answer because it would cost him $1. He well knew, as any reasonable man would know, that it was concerning his son's body. Had he answered that call, with that trifling expense, he would have learned all the facts, and have made the contract for shipping the body, or would have failed in his negotiations. A party cannot allow matters to thus proceed, when by a slight effort or small expense all difficulties would be avoided. Warren v. Stoddart, 105 U. S. 224, 229, 26 L. Ed. 1117; Baird v. U. S., 131 U. S. cix, 21 L. Ed. 519.

So that it clearly appears that the plaintiff was deprived of seeing the body of his son, and having it interred in his own burying ground, by reason of one contingency after another, all of which must have been solved in favor of the plaintiff before the body would have gone forward.

We conclude that this would be allowing a recovery by reason of one contingency after another, and one doubt after another, all of which must have been coupled together and worked out to the satisfaction of the plaintiff. He says he was a poor man and with great difficulty could raise the small amount of money for the payment of the first message to Hickman and the other small incidental expenses. It does not appear that he could have raised $65, which would have been required. And, even if such fact did appear, the fact still remains that it was one contingency after another which might never have taken place, and the failure of any one would have left the body for burial at Terre Haute. But if he could have raised the money, then by the comparatively small expense of $125 the body would have been taken up and shipped forward after one month's delay. We are of the opinion that the request of defendant for a directed verdict in its favor should have been granted.

As above stated, the message was never received at Terre Haute. There is a connection by wire over defendant's lines from Hot Springs to St. Louis. The message was delivered to the company at Hot Springs, at 12 o'clock noon, and within a few minutes it was in the St. Louis office, at which place it had to be relayed for Terre Haute. At that relay office within a very few minutes the message was put on the wire for Terre Haute. The wire on which the message was put was the usual wire for Terre Haute business, and the wire was in working order. Immediately after the message was thus put on the Terre Haute line by the St. Louis operator, a signal or check was

received by the St. Louis operator acknowledging receipt of the message as though it had been received in Terre Haute. To account for this a showing is made that at that time there existed a violent and vicious strike of defendant's operators all over the country. Its force of employés in the St. Louis office by reason of this strike had been reduced to about one-third in number. At the Terre Haute office the reduction in the working force was but slight. But the evidence is that all over the country telegraph keys were opened, the wires grounded, and messages interfered with by strikers and unauthorized persons. And all this was without fault of the company. No one can say just what became of this message, nor at what point between St. Louis and Terre Haute it left defendant's wire. But the uncontroverted evidence conclusively shows that at some point between the two cities the message left defendant's wire through no fault of it or its employés. When the St. Louis operator put the message on the wire, he had fully and completely performed his duty except in the one thing, namely, to receive back the signal or information that the message had been received at Terre Haute. This duty the St. Louis operator fully performed, as he believed, when receiving the signal that the message had been received at Terre Haute. And when he received that signal, his duty was at an end. No operator at Terre Haute was in any degree at fault, because the message never went to that office. In our opinion there can be but the one conclusion, that the message was taken from the wire at some point unknown, between St. Louis and Terre Haute, and was thus taken from the wire by an unauthorized person. And by such a showing the company is exonerated. A telegraph company is not an insurer. When the message is received and the charges paid, it must up to its capacity transmit that with other messages tendered, and the failure to transmit is a prima facie showing of negligence, and warrants a verdict, unless such failure is satisfactorily explained. A complete statement of defendant's obligation and the rules governing its business in a case like this is stated in Cooley on Torts (3d Ed., vol. 2, p. 1382), where it is said:

"In reason as well as on authority, they are responsible in sending, receiving, and delivering messages, on the grounds only that through their negligence errors or unnecessary delays have occurred, or that they have failed to transmit and deliver messages impartially. If a message is not sent and delivered within a reasonable time under the circumstances, or if errors occur in the transmission, which are attributable to their negligence, they are responsible for all consequent damages; but they are not insurers, and, if errors occur without their fault, they are not responsible."

So that from principle and authority it clearly appears that defendant is not an insurer and only chargeable with negligence, with the burden upon the company to excuse itself from the charge of negligence by a satisfactory showing of its inability to transmit and deliver the message. By such a showing it is not responsible in damages.

But the defendant not being an insurer and only chargeable with negligence, with the failure to deliver the message presumptively supplying the proof as to such charge, the company has made a showing which to our mind admits of no difference of opinion. To other-

wise hold would be to declare that such presumption of negligence is a conclusive one, and not subject to rebuttal. It will not do to hold that because the company could not name what key was opened, or where the wire was grounded, or what vicious or unauthorized person interfered with the message, or a failure to show who sent to the St. Louis operator the false information that the message had been received at Terre Haute, is not a sufficient excuse.

There should have been a directed verdict for the defendant on each of the foregoing propositions, failing to give which the Circuit Court was in error.

The judgment of the Circuit Court is reversed, and the cause is remanded, with directions to grant a new trial.

ADAMS, Circuit Judge (specially concurring). This was an action to recover for mental anguish and suffering alleged to have been occasioned by the failure of the telegraph company to transmit and deliver a message intrusted to it by the plaintiff. Apart from the statute (section 7947, Kirby's Dig.), no recovery could have been had for mere mental anguish and suffering. By the statute such recovery was authorized if it resulted from negligence "in receiving, transmitting or delivering" the message.

1. The evidence is uncontradicted that the telegraph company for a consideration paid to it received and undertook to transmit and deliver a message to E. V. St. Clair, Terre Haute, Ind., and that it failed to deliver the same. That failure constituted a breach of its contract and was presumptive evidence of want of due care in the performance of its obligation which constituted negligence within the meaning of the Arkansas statute in question. Whether that presumption was overcome by the fact that there was no person in Terre Haute who spelled his name E. V. St. Clair, while there was one engaged in the undertaker's business (with which alone the message was concerned) who spelled his name E. V. Sinclair, was an issue of fact determinable under the well-recognized rule requiring the telegraph company to exercise reasonable care to deliver a message as directed; whether the presumption was overcome by the existence of a strike depended upon the real but disputed terms of the contract made between the plaintiff and the telegraph company, as well as upon conflicting evidence on the issue whether the strike caused the failure to deliver the message or not; and whether the failure to deliver the message was excused for other reasons assigned by the telegraph company depended upon the facts of the case. In my opinion, therefore, the court cannot and ought not to hold as a matter of law that there was no proof of negligence on the part of the telegraph company. That issue was clearly for the jury.

2. Whether or not the plaintiff would have succeeded in seeing the body of his son and securing its burial in the family lot if the message had been delivered also depended upon the facts of the case and was for the jury to decide. Moreover, whether he would or would not have so succeeded is material only in the determination of the quantum of mental anguish and suffering which he endured.

To have had the possibility of doing so thwarted by the fault of the telegraph company might have occasioned mental anguish and suffering even if the effort had proven ineffectual. The recoverable damages provided for by the statute reside in the domain of sentiment, and I do not think they can be figured out in dollars and cents, or that they are subject to the rules condemnatory of conjecture, speculation, and contingency which govern the measure of damages for breaches of ordinary contracts which the majority think are applicable to this case. In my opinion the character of the action and the intangible nature of the damages which are recoverable preclude the application of these rules.

The case was peculiarly one for the jury, first, to ascertain and find under appropriate instruction from all the facts and circumstances in evidence whether the telegraph company was negligent in the discharge of its duty to the plaintiff, and, if so, to award him such damages for mental anguish and suffering as they might conclude in view of all the facts and circumstances of the case he was entitled to have. The effort of the majority to demonstrate that there was neither negligence nor damages and, therefore, that there could be as a matter of law no recovery, is, in my opinion, an unwarrantable invasion of the province of the jury.

Notwithstanding the fact that I am unable to approve of the reasons assigned by the majority for reversing the judgment, I concur in that reversal, but do so solely on the ground that the trial court refused to give certain instructions requested by defendant's counsel definitely defining the degree of care required of the telegraph company in the matter of transmitting and delivering the message in question.

As abstract propositions of law, the requested instructions were concededly sound. Their refusal, however, was justified on the ground that the general charge stated the true rule. This, I think, is a mistake. The court told the jury that the presumption of negligence arising from the nondelivery of the message imposed the burden upon the telegraph company "to show to the satisfaction of the jury that it did everything that it possibly could for the purpose of transmitting and delivering the message." I think there is no warrant for imposing that high degree of care upon the telegraph company. The true rule is that of ordinary care only; and, while the court in some part of its charge so stated, it undoubtedly left the jury, by portions of its charge like that just quoted, in a state of doubt as to the true rule on the subject. The charge as a whole, therefore, did not excuse the court from giving the correct exposition of the law as requested by defendant.