## KARRICK v. ROSSLYN STEEL & CEMENT CO.

Court of Appeals of District of Columbia.
Submitted January 3, 1928. Decided March 5, 1928.

No. 4584.

1. Sales ⟘417—Evidence held insufficient to justify liability for damages for delay in supplying certain steel for use in construction of building.

In action to recover purchase price of certain steel for use in construction of building, wherein defendant filed a counterclaim for damages for delay, evidence to effect that claim was speculative only and dependent on contingencies, such as labor difficulties and delay of other contractors and materialmen, *held* insufficient to justify finding of liability.

2. Damages ⟘18—Damages for breach of contract or wrong done must result therefrom, and whether they do cannot be determined by speculation or dependency on contingency.

Damages can only be allowed for that which is result of breach of contract or of wrong done, and that which is result of such breach or wrong cannot be determined by speculation or argument or dependency of contingency.

3. Contracts ⟘303(4)—Builder's failure to perform contract within stipulated time cannot be taken advantage of by owner causing failure.

Builder's failure to perform contract within stipulated time cannot be taken advantage of by owner, where failure is caused by wrongful acts of owner and failure to perform his part of contract, or by fault of persons for whose conduct owner is responsible.

Appeal from the Supreme Court of the District of Columbia.

Action by the Rosslyn Steel & Cement Company against James L. Karrick, wherein defendant filed a counterclaim. From the judgment, defendant appeals. Affirmed.

C. H. Merillat, of Washington, D. C., for appellant.

D. D. Drain, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. The Rosslyn Steel & Cement Company, as plaintiff below, sought judgment against James L. Karrick, as defendant, in the sum of $3,214.49, as the price of certain reinforcing steel bars which plaintiff alleged it had supplied, fabricated, and delivered in place in forms for defendant, for use in the construction of a certain apartment house which defendant was building.

The defendant denied any indebtedness to plaintiff, and by way of counterclaim prayed for judgment against plaintiff in the sum of $14,389.37 because of the following items, to wit: That plaintiff had contracted to furnish to defendant all of the reinforcing steel required for said building, fabricated and set in place as and when needed in the course of its construction, at and for the price of $80 per ton, but that a large part of the steel which plaintiff delivered was not fabricated or set in place as stipulated in the contract, and that defendant thereby was put to loss and costs in the sum of $3,020.37; that plaintiff had failed to deliver all of the steel contracted for, to defendant's loss in the sum of $385; that some of the steel furnished by plaintiff did not conform to the agreed specifications, to defendant's damage in the sum of $1,360, less a credit of $576; that there was due to defendant the sum of $200 for cement sacks; and that plaintiff had failed to deliver the steel as and when needed in the course of the construction of the building as stipulated in the contract, whereby plaintiff had caused a delay of 60 days in the completion of the building as a whole ready for occupancy, to defendant's damage in the sum of $10,000.

Issue was joined, and a special master was appointed to hear and determine any and all issues in the cause, subject to final action by the court as in equity. The special master found upon the evidence that the defendant should be charged with steel delivered by plaintiff to defendant in the sum of $5,173.14, from which should be deducted the sum of $5,095.27, because of certain of the items claimed in defendant's set-off; but the special master totally disallowed defendant's claim for damages in the sum of $10,000 because of the alleged delay in the final completion of the building as a whole.

The court approved this report and entered judgment accordingly, whereupon the defendant appealed. The appeal relates wholly to .defendant's claim for damages because of the alleged delay in the final completion of the building as a whole.

It appears that on November 24, 1916, Karrick entered into a contract with one Mosher whereby the latter engaged to erect the concrete work of the building in question, furnishing all labor and material therefor, the pouring of the reinforced concrete to be finished in 25 weeks of good working weather; that Mosher then closed a contract with the plaintiff company whereby the company agreed to furnish the reinforcing steel for the concrete work according to specifications, and to fabricate and deliver it in place in the forms as and when required in the course of the construction of the building, the price to be $80 per ton; that the agreement between Mosher and plaintiff was to the effect that the steel should all be delivered within four months after the early part of December, 1916; that work was begun upon the building early in December, 1916, but that little progress was made by May 17, 1917, at which time Mosher and Karrick fell out and dissolved their contract; that up to that time plaintiff had faithfully delivered all the steel required of it; and plaintiff then accepted Karrick in place of Mosher as the other party to the contract. The construction of the building was delayed by various causes, among which were Karrick's delay in making the necessary excavation, Mosher's failure to carry on the work promptly, Karrick's efforts to secure changes in the building regulations, labor difficulties, delay in the delivery of steel owing to war conditions, and delays by other contractors and materialmen. Karrick claims that the plaintiff's delay in delivering steel when required caused a delay of 60 days in the final completion of the building. The special master made allowances for certain of the damages claimed by Karrick, including the excess in price of steel purchased by Karrick in the open market, the overweight of steel supplied because of larger sizes than called for by the plans, overweight of steel by billing in excess of standard, and the cost of fabricating and laying steel which the company failed in doing; but totally denied Karrick's claim for additional damages based upon the theory that the building as a whole would have been ready for occupancy 60 days earlier than it was, had the company fully discharged its contract.

Upon this subject the special master said:

"I have thus detailed the testimony on the subject of delay in order that the contention of the defendant on this part of its counterclaim, so urgently pressed, may be fairly presented in my report. Whether the defendant is entitled to damages, and if so what damages, are questions that present little difficulty when the whole effect of this· testimony is considered.

"I am unable to conclude that this testimony, by any means, establishes such a relation between the delay in the delivery of steel and the delay in the completion of the building as to justify a finding that but for such delay the building would have been completed earlier. It must be apparent that with the long delay of seventeen months in the completion of the concrete structure of the building with a period of more than two years required for the completion of the building, with delay in procuring various other material that entered into the construction, with the last steel delivered in May, 1918, and the structure not finally completed till February or March, 1919, the testimony that the delay on the steel delayed the completion of the whole building 60 days (or any other period) is but a guess hedged about with too many contingencies to allow it to be made the basis of a recovery. A guess that the master would have to make in order to allow such recovery would be that, if the steel had been delivered earlier, all the other various delays would have so related themselves that the building would have been completed 60 days earlier than it was."

[1-3] We think this statement is fully sustained by the record. The claim in question is speculative only, and depends upon contingencies concerning which no reliable conclusion can be formed. Moreover, it is apparent that the plaintiff's default was caused in part by the delay of Karrick or of others for whom the plaintiff was not responsible.

"Damages can only be allowed for that which is the result of the breach of the contract, or of the wrong done. And that which is the result of such breach or wrong cannot be determined by speculation, or argument, or the dependency of one contingency on another." Western Union Telegraph Co. v. Ivy (C. C. A.) 177 F. 63.

"The failure of the builder to perform the contract in the time stipulated therefor will be excused, and the owner cannot take advantage thereof, where such failure is caused by the wrongful acts of the owner or by his failure to perform his part of the contract, or by the fault of persons for whose

conduct the owner is responsible." 9 C. J. 783.

The judgment of the lower court is affirmed.